## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

SCOTTSDALE INSURANCE )
COMPANY, )
                     )
        Plaintiff, )
                     )
v.                   )          Case No.  06-CV-0097-CVE-SAJ
                     )
OWL NITE SECURITY, INC.; TIARA )
HENDERSON, natural daughter and )
administratrix of the ESTATE OF )
RON HENDERSON, SR., deceased, )
SHEILA HENDERSON THOMPSON, )
Individually as Surviving Spouse of )
Ron Henderson, Sr., Deceased and as )
Next Friend of Marlin Craft, Jr., )
a Minor, and DONALD RAY COWAN, )
                     )
        Defendants. )

## OPINION AND ORDER

Now before the Court is Plaintiff Scottsdale Insurance Company's Motion for Summary

Judgment (Dkt. # 21).  Plaintiff requests that the Court enter judgment in its favor declaring that it

has no duty to defend or indemnify defendants Owl Nite Security, Inc. ("Owl Nite") and/or Donald

Ray Cowan ("Cowan") with respect to the state court lawsuits commenced by defendants Tiara

Henderson ("Henderson") and Sheila Henderson Thompson ("Thompson") or otherwise in relation

to the incident occurring on January 10, 2004.[1]  Defendants argue that the Court should declare that

the insurance policy ("Policy") issued by Scottsdale Insurance Company ("Scottsdale") requires

plaintiff to defend them in the underlying state action and, in the event of adverse judgments, to

---

[1]     In her amended petition, Thompson identifies the date of the incident as January 10, 2004.
        Henderson identifies the date as January 20, 2004. The date of the incident is irrelevant for
        purposes of the motion for summary judgment before the Court; for simplicity, the Court
        will refer to the date of January 10, 2004.

indemnify for such judgments.  For the reasons set forth below, the Court grants plaintiff's motion for summary judgment and declares that plaintiff in under no duty to defend or indemnify defendants.

## I.

Henderson and Thompson are the daughter and surviving spouse, respectively, of Ron Henderson, Senior ("Ron Henderson").  Henderson and Thompson commenced separate lawsuits on August 3 and August 5, 2005, respectively, in the District Court of Tulsa County alleging that defendant Cowan wrongfully shot and killed Ron Henderson on January 10, 2004.  The incident took place at the Windsong Apartments, where Cowan worked as a security guard for Owl Nite. Henderson and Thompson also allege in their state court petitions that Owl Nite is liable for the actions of its employee, Cowan, and that Owl Nite negligently hired, trained, and retained Cowan.

In her amended petition, Thompson alleges that, "Without provocation, Mr. Cowan shot and murdered Mr. Henderson, who died at the scene." Dkt. # 20, Ex. A, Thompson Amended Petition, ¶ 7.  The shooting occurred in the presence of Marlin Craft, Jr. ("Craft"), Ron Henderson's minor stepson. Thompson further alleges,

> Owl Nite and Cowan had a duty to supervise, protect and care for the residents and guests of the Windsong Apartments, and to not harm them. Owl Nite also had an independent duty to investigate Cowan's background and competence, to train him, to instruct and supervise him, and failed to do so, resulting in Mr. Henderson's death.

Id., ¶ 9.  She further alleges that both Owl Nite and Cowan's actions "constitute negligence and gross negligence" and "evidence malice and a willful, wanton and reckless disregard for the rights of Thompson and Craft." Id., ¶¶ 10, 12.

Henderson makes similar allegations in her petition.  She alleges that "Mr. Cowan did unlawfully assault Mr. Henderson, after which time he unlawfully discharged his firearm six times,

brutally murdering Ron Henderson, who was unarmed and in the presence of his minor step-son."
Dkt. # 20, Ex. B, Henderson Petition, at 2.  Henderson further claims that Owl Nite "was negligent
in its initial hiring and eventual retention of [Cowan]" and that "the conduct of the Defendants was
malicious, willful, wanton and in reckless disregard of the rights of Ron Henderson and the general
public." Id.

In their answers to the Henderson and Thompson petitions, defendants state that, at the time
of the incident, Cowan was acting in self-defense and defense of others.  They contend that Cowan's
actions "were entirely justified and were not in any manner wrongful, negligent or intentional." Dkt.
# 23, Ex. 2, Owl Nite Answer, ¶ 5; Dkt. # 23, Ex. 3, Cowan Answer, ¶ 5.  Defendants contend that
Ron Henderson threatened to run over Cowan with his car, thereby prompting Cowan to shoot Ron
Henderson in self-defense and defense of others. Dkt. # 23, Ex. 5, Craft Statement, at 6, 9.

At the time of the January 10, 2004 incident, the Policy issued by Scottsdale to Owl Nite was
in effect.  It provides:

> We [Scottsdale] will pay those sums that the insured [Owl Nite] becomes legally
> obligated to pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies. We will have the right and duty to defend the insured
> against any "suit" seeking those damages. However, we will have no duty to defend
> the insured against any "suit" seeking damages for "bodily injury" or "property
> damage" to which this insurance does not apply.

Dkt. # 20, Ex. C, Policy, Section (I)(A)(1), at 17.  The Policy specifically excludes from coverage:

> "Bodily injury" or "property damage" expected or intended from the standpoint of
> the insured. This exclusion does not apply to "bodily injury" resulting from the use
> of reasonable force to protected persons or property.

Id., Section (I)(A)(2), at 18 ["Expected or Intended Injury Exclusion"].  It also contains an Assault
and Battery Exclusion ["Assault and Battery Exclusion"]:

3

This insurance does not apply to "Injury," "Bodily Injury," "Property Damage," or "Personal and Advertising Injury" ("Personal Injury" or "Advertising Injury") arising from:

1.   Assault and/or Battery committed by an insured, any employee of any insured, or any other person;

2.   The failure to suppress or prevent Assault and/or Battery by any person in 1. above;

3.   The selling, serving or furnishing of alcoholic beverages which resulting in an Assault and/or Battery;

4.   The negligent:
   a.   Employment;
   b.   Investigation;
   c.   Supervision;
   d.   Reporting to the proper authorities, or failure to so report; or
   e.   Retention

   by a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 1, 2, or 3 above.

Id., Assault and Battery Exclusion, at 47.

Following the January 10, 2004 incident, plaintiff sent Owl Nite a letter stating, "after a review of the policy and the facts of the instant matter, it is apparent that the Scottsdale policy does not cover this claim." Dkt. # 23, Ex. 4, at 1.  Scottsdale then filed this action on February 15, 2006 seeking a declaration that it did not owe a duty to defend or a duty to indemnify Owl Nite in the underlying state court actions.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 251-52.

## III.

### A.

Under Oklahoma law, the duty to defend is separate from and broader than the duty to indemnify.  <u>First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland</u>, 928 P.2d 298, 302 (Okla. 1996).  An insurer has a duty to defend an insured whenever it knows of facts that give rise to potential liability under the policy.  <u>Id.</u> at 302; <u>Texaco, Inc. v. Hartford Accident and Indemnity</u>, 453 F. Supp. 1109, 1113 (E.D. Okla.1978).  "The insurer's defense duty is determined *on the basis of information* gleaned *from the petition (and other pleadings), from the insured* and *from other sources available to the insurer* at the time the defense is demanded (or tendered) rather than by the

outcome of the third-party action." First Bank of Turley, 928 P.2d at 303-04 (emphasis in original). In other words, the duty to defend is not limited to the precise language of the pleadings; rather "[t]he insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible." Id. at n.15; see also American Motorists Inc. Co. v. Southwestern Greyhound Lines, Inc., 283 F.2d 648, 649 (10th Cir. 1960) ("this court is committed to the general rule that the obligation of an insurance company to defend its insured is determined by the actual facts brought to the attention of the company rather than pertinent allegations contained in the complaint or petition of a complainant against the insured which are not true."); Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 833 F. Supp. 1239, 1246 (W.D. Mich. 1993); Allstate Ins. Co. v. Gilbert , 852 F.2d 449, 453 (9th Cir.1988).

An insurer "must defend an action in which damages that are *potentially* within the policy's coverage are sought, even though coverage may ultimately not be afforded." First Bank of Turley, 928 P.2d at n.16 (emphasis in original); see also Montrose Chemical Corp. of Cal. v. Superior Court, 861 P.2d 1153, 1160 (Cal. 1993); CNA Casualty of Cal. v. Seaboard Surety Co., 222 Cal. Rptr. 276, 278-79 (Cal. Ct. App. 1986).  There need only be a possibility of recovery, not a probability of recovery. First Bank of Turley, 928 P.2d at n.14.

The defense duty is measured and limited by the nature and kinds of risks covered by the policy. Id.; see also Safeco Title Ins. Co. v. Moskopoulos , 172 Cal. Rpt. 248 (Cal. Ct. App. 1981); Hartford Fire Ins. Co. v. Karavan Enterprises, Inc., 659 F. Supp. 1075, 1076 (N.D. Cal. 1986); Deseret Fed. Sav. & Loan Ass'n v. U.S. Fidelity & Guar. Co., 714 P.2d 1143, 1146 (Utah 1986). Thus, an insurer does not have a duty to defend if the claims in the underlying action fall within an

exclusion from coverage. See Acceptance Ins. Co. v. Walkingstick, 887 F. Supp. 958, 961 (S.D. Tex. 1995).

In contrast to the duty to defend, the duty to indemnify is based upon liability in the underlying action.  An insurer is required to indemnify the insured if the insured is held liable in the underlying action and if the policy provides coverage for the claims made against the insured. See Walkingstick, 887 F. Supp. at 961.

## B.

"An action for declaratory relief is appropriate to resolve coverage disputes between the insurer and insured." First Bank of Turley, 928 P.2d at 305; see Safeco Ins. Co. of America v. Sanders, 803 P.2d 688 (Okla. 1990) (answering certified questions of Oklahoma law for the Northern District of Oklahoma where carrier brought declaratory judgment action against insureds for determination of non-liability); Ohio Casualty Ins. Co. v. Todd, 813 P.2d 508 (Okla. 1991) (answering certified questions of Oklahoma law where insurer pressed for relief declaring that it had no duty to defend the insured).  The action before this Court does not involve the same factual issues before the state court.  For reasons explained below, the outcome of the underlying state action will not impact the instant action, nor will the ruling in this case impact the findings of fact or conclusions of law in the state case. See Essex Ins. Co. v. Yi, 795 F. Supp. 319, 322 (N.D. Cal. 1992); Colton v. Swain, 527 F.2d 296, 3030 (7th Cir. 1975).  Thus, the question of plaintiff's duty to defend is ripe for declaratory relief.

## C.

Whether plaintiff owes a duty to defend or indemnify depends on the interpretation of the Policy. Under Oklahoma law, insurance policies are contracts. See OKLA. STAT. tit., 36 § 102; First Bank of Turley, 928 P.2d at 302; Silver v. Slusher, 770 P.2d 878, 883 (Okla. 1988); Christian v. Metropolitan Life Ins. Co. , 566 P.2d 445, 448 (Okla. 1977). "An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991). Parties to an insurance contract are "bound by the terms of contract and courts will not undertake to rewrite terms thereof." Id. "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Id.

Whether an insurance contract is ambiguous is a matter of law for the Court to decide. Id. If the terms are unambiguous, clear, and consistent, then they are accepted in their plain and ordinary sense. Id. "If the insurance policy language is doubtful and susceptible to two constructions, without resort to and following application of the rules of construction, then a genuine ambiguity exists, and the contract will be interpreted, consistent with the parties' intentions, most favorable to the insured and against the insurance carrier." Id. at 376-77.

The general declarations of insurance coverage determine the insurance carrier's liability. Policy exclusions "are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy." Id. at 377. "In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer." Id.

**D.**

Plaintiff contends that it owes no duty to defend or indemnify based on the Assault and Battery Exclusion. The terms "assault" and "battery" are not defined in the Policy. Moreover, the Oklahoma Supreme Court has not addressed the precise issue of whether an assault and battery exclusion obviates the duty to defend where the insured raises the issue of self-defense. Thus, the Court must predict what the Oklahoma Supreme Court would decide if presented with this issue.

In Oklahoma, assault and battery, in the criminal context, require a willful and unlawful use of force. OKLA. STAT. tit. 21, §§ 641, 642. In the civil context, assault and battery are defined in accordance with the Restatement (Second) of Torts and require only that the harmful or offensive contact be intended. See Brown v. Ford, 905 P.2d 223, 229 n.34 (Okla. 1995).[2] Thus, if the Court attributes the criminal context of assault and battery to the Policy, then plaintiff would have to defend Owl Nite in the underlying state action because self-defense does not involve the unlawful use of force. By contrast, if the Court applies the civil context of assault and battery, then plaintiff would not have a duty to defend Owl Nite because Cowan's actions were intentional, even if lawful.

Despite the fact that there are different criminal and civil definitions of assault and battery, the Court finds that the Exclusion is unambiguous. The Policy was drafted in a civil context, and

_____

[2]     Section 21 of the Restatement (Second) of Torts states that an actor is liable for assault if: (a) he acts intending to cause a harmful or offensive context with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension. Brown, 905 P.2d at 229 n.34 (quoting the Restatement (Second) of Torts).

Section 13 of the Restatement states that an actor is liable for battery if: (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results. Id.

9

its purpose was to insure against civil liability.  Thus, the terms "assault" and "battery" should be afforded their ordinary civil meanings.  It follows that, under a natural and reasonable interpretation of the Policy, Cowan's conduct falls within the Assault and Battery Exclusion.[3]

This holding is consistent with numerous other court decisions.  For example, in Yi, 795 F. Supp. at 322-24, the court held that, regardless of whether the insured was vindicated in state court under a self-defense theory, the assault and battery exclusion applied, and the insured was not required to defend or indemnify.  Similarly, in St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc., 582 F. Supp. 865, 868 (E.D. Pa. 1984), the court held that the insured's self-defense theory was irrelevant and that the assault and battery exclusion barred coverage of claims that arose out of an assault and battery by "any person."

Additionally, the fact that Henderson and Thompson allege that Owl Nite was negligent in hiring and retaining Cowan does not render the Assault and Battery Exclusion inapplicable.  On the contrary, the Assault and Battery Exclusion specifically applies to the negligent employment, supervision, and retention of an employee or one who would be excluded in the other subparts.  Moreover, notwithstanding the clear provision concerning negligent employment, the negligence claims arise out of the assault and battery at issue in the underlying state action, and thus are covered by the Assault and Battery Exclusion.  See St. Paul Surplus Lines Ins. Co., 582 F. Supp. at 868 (holding that the assault and battery exclusion "applied not only to the intentional tort of assault and battery, but also to negligence in failing to stop or prevent its occurrence."); Stiglich v. Tracks, D.

---

[3]     This is the same conclusion that the Tenth Circuit reached in an unpublished opinion interpreting Oklahoma law. See Sphere Drake Ins. P.L.C. v. D'Errico, 2001 WL 135670 (10th Cir. Feb. 16, 2001). While unpublished opinions are not binding authority and their citation is disfavored, see 10th Cir. R. 36.3, the Court nonetheless finds the Tenth Circuit's reasoning in that opinion persuasive.

C., Inc., 721 F. Supp. 1386, 1387 (D. D.C. 1989) (holding that assault and battery exclusion barred coverage of a claim arising from alleged failure to hire sufficient security); Terra Nova Ins. Co. v. Thee Kandy Store, Inc., 679 F. Supp. 476, 478 (E.D. Pa. 1988) (assault and battery exclusion barred coverage for negligence in preventing the assault and battery since "the original cause of harm arose from an alleged assault and battery").

### E.

Defendants argue that the Assault and Battery Exclusion "has no effect on the existence of the coverage the Plaintiff should be providing the Defendants." Dkt. # 23, at 11.  They argue that the "reasonable force" exception to the Expected or Intended Injury Exclusion "obviously limits the applicability of the assault and battery exclusion to cases where no self defense occurs." Id. Defendants claim that Cowan acted with "reasonable force" in shooting Ron Henderson; thus, his actions fall under the exception to Expected or Intended Injury Exclusion.

The Court disagrees with defendants' argument.  The reasonable force exception to the Expected or Intended Injury Exclusion does not extend to the Assault and Battery Exclusion.  As noted above, the Expected or Intended Injury Exclusion reads:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protected persons or property.

Dkt. # 20, Ex. C, Section (I)(A)(2) (emphasis added).  The clear language of this provision indicates that the reasonable force exception applies only to the Expected or Intended Injury Exclusion, not other exclusions such as the Assault and Battery Exclusion.

The existence of the "reasonable force" exception to the Expected or Intended Injury Exclusion does not render the Policy ambiguous.  As noted above, exceptions in insurance policies

are read "seriatim," meaning that "each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage <u>and all prior exclusions</u>." <u>Dodson</u>, 812 P.2d at 377 (emphasis added).  Thus, the Assault and Battery Exclusion operates independently of the Expected or Intended Injury Exclusion.  The fact that the Expected and Intended Injury Exception contains a "reasonable force" exception in no way limits the effect of the separate and distinct Assault and Battery Exclusion.  The exception cannot be read to create an ambiguity in the Policy where one does not exist.

The structure of the Policy itself further supports this holding.  The Expected or Intended Injury Exclusion appears in the "General Liability Coverage Form" in Section I of the Policy.  The Assault and Battery Exclusion appears later in the Police and includes the following warning: "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY."  Thus, far from cross-referencing the Expected or Intended Injury Exception, the Assault and Battery Exception clearly stands independently from the general coverage provisions and other exclusions.

Defendants point to several cases where courts held that, where facts supported a reasonable possibility that the insured acted in self-defense, the insurer owed a duty to defend. <u>See</u> <u>Policeman's Benefit Ass'n of Nashville v. Nautilus Ins. Co.</u>, 2002 WL 126311 (Tenn. Civ. App. Feb. 1, 2002); <u>Fireman's Ins. Co. of Washington, D.C. v. 860 West Tower, Inc.</u> , 246 A.D.2d 401 (N.Y. App. Div. 1998); <u>Security Ins. Co. of Hartford v. Altipenta, Inc.</u>, 1997 WL 197987 (E.D. Pa. Apr. Apr. 21, 1997).  However, these cases are readily distinguishable because, there, the insurance policies at issue did not include an assault and battery exclusion. <u>See</u> <u>Yi</u>, 795 F. Supp. at 324 n.2 (distinguishing between intentional injury exclusions and assault and battery exclusions).

Thus, the Court finds that the "reasonable force" exception to the Expected or Intended Injury Exclusion does not govern in this case. The Assault and Battery Exclusion clearly applies and dictates that plaintiff is under no duty to defend or indemnify.

**IV.**

In summary, the Court holds that plaintiff is under no duty to defend or indemnify under the terms of the Policy. Regardless of defendants' self-defense theory, the incident on January 10, 2004 falls within the Assault and Battery Exclusion. The exception to the Expected or Intended Injury Exclusion for "reasonable force" does not change the Court's analysis. Therefore, the Court grants the plaintiff's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Plaintiff Scottsdale Insurance Company's Motion for Summary Judgment (Dkt. # 21) is hereby **granted**. A separate judgment is entered herewith.

**DATED** this 15th day of December, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT